## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

1. DUONGAMOL DEESOMJIT, and )
)
2. SARITDEJ DEESOMJIT )
)
Plaintiffs, )
)
v. )    Case No. CIV-2013- 530-D
)
1. STATE FARM FIRE AND CASUALTY )
COMPANY. )
Defendant. )

### COMPLAINT

In support of their lawsuit, plaintiffs state as follows:

1.      Plaintiffs bring this lawsuit in an effort to help protect Oklahoma and U.S. citizens from mistreatment by property and casualty insurers with respect to first party property damage claims and to enforce their own rights under Oklahoma law to recover benefits due according to their insurance policy with the Defendant.

### Parties

2.      Plaintiffs Duongamol and Saritdej Deesomjit are husband and wife residing in the City of Edmond, in the State of Oklahoma.

3.      Defendant State Farm Fire and Casualty Company is a foreign for-profit-insurance corporation formed and incorporated in the State of Illinois with its principal place of business located in Illinois (herein referred to as "State Farm").

4.      Defendant State Farm is licensed to conduct business in the State of

Oklahoma and may be served with process through the Okla. Dept. of Insurance.

5.      This action is not related to any other case filed in this court, as far as the plaintiffs are aware.

## Jurisdiction

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## Facts

7.      At all times material hereto Plaintiffs owned property located at 2313 N.W. 161st Street, Edmond, Oklahoma, 73013, which was insured pursuant to the terms and conditions of an insurance policy issued by Defendant State Farm, i.e., Policy Number 36-EG-84044 (herein the "Policy").

8.      On or about May 29, 2012, a wind and hail storm caused damage to the Plaintiffs' home located at 2313 N.W. 161st Street, Edmond, Oklahoma, 73013 (herein the "Property" or "Home").

9.      The roof of Plaintiff's Home, along with many other parts of the home, was damaged by hail and wind.  Plaintiff filed a claim pursuant to the Policy, i.e., Claim No. 36-09C0-140 (herein the "Claim").

10.     At all times material hereto, plaintiff complied with the terms and conditions of the Policy issued by Defendant State Farm.

11.     The scope of repair relative to Plaintiff's Claim required a minimum of six (6) trades, including, carpentering, fencing, overhead door installation, painter, roofer, siding, and HV/AC.

12.     However, defendant has wrongfully and arbitrarily refused to pay any amount for general contactor's overhead and profit.

### Breach of Contract

13.     Plaintiff met all conditions precedent to the application and enforcement of said insurance Policy, yet Defendant unreasonably breached the terms and conditions of the Policy by refusing to pay Plaintiff the amount due under the Policy for damage caused by the aforementioned storm.   Defendant also breached the parties' contract by engaging in other acts during its handling of Plaintiff's claim that were contrary to the Policy and the laws of Oklahoma, such as refusing to perform a reasonable investigation and evaluation of the number of trades required to repair damage to Plaintiff's Property.

14.     Defendant State Farm waived any contractual rights it may have, including but not limited to appraisal, arbitration, and any one-year limit within which to bring suit, due to its delay, unfair actions, breach of the underlying contract, and wrongful denial of Plaintiff's claim.   Additionally, State Farm's breach of the underlying contract relieves Plaintiffs of any corresponding obligations, including but not limited to appraisal, arbitration, or duty to bring his lawsuit within a certain time period different than what

Oklahoma statutory and common law allows.

## Bad Faith

15.    Defendant State Farm and its agents and/or its employees were unreasonable in their investigation, evaluation, communication, and payment of policy benefits that are due and owing to plaintiff.

16.    Specifically, Defendant State Farm breached its duty of good faith and fair dealing by engaging in an unreasonable investigation and evaluation, which included, *inter alia*, Defendant's refusal to adopt a reasonable standard for determining when general contractor's overhead and profit is due on a claim like the Plaintiffs'.

17.    And furthermore regarding specific acts of bad faith by Defendant State Farm, it refused to pay an amount for general contractor's overhead and profit when it was clearly called for.  If defendant had a reasonable standard for determining when general contractor's overhead and profit is owed and/or performed a fair evaluation with respect to the Claim, Defendant would have determined that an amount for general contractor's overhead and profit was due to plaintiff.

18.    And another specific manner in which State Farm breached its duty of good faith and fair dealing occurred when State Farm refused to reevaluate/reinspect fairly and reasonably its decision about whether to pay an amount for general contractor's overhead and profit.  Defendant State Farm was asked to reconsider its position about general contractor's overhead and profit on the Claim, and State Farm was made aware that at least

one neighbor of the plaintiffs had received payments for general contractor's overhead and profit relative to a similar but less extensive (in terms of the number of trades required to perform repairs) claim arising out of the same loss event.   Had State Farm fulfilled its duty of communication and cooperation with the plaintiffs to derive an agreed to scope of loss, it would have (*assuming arguendo* that State Farm would have been reasonable with the other aspects of its duty to fairly investigate and evaluate the Claim) concluded that payment for general contractor's overhead and profit was due the plaintiffs. However, State Farm ignored its insureds and their contractor's pleas for reconsideration of what was obviously an error by State Farm.

19.     Defendant was repeatedly informed by Plaintiffs and plaintiffs' general contractor of defendant's failures with respect to refusing to pay general contractor's overhead and profit.

20.     However, defendant wrongfully and without justification refused to make payment for any general contractor's overhead and profit.

21.     Within the past fifteen (15) years Defendant has used the "three trade rule" as a measuring stick to determine in most instances when Defendant would make payment for general contractor's overhead and profit.

22.     The amount included for general contractor's overhead and profit is customarily 10% for overhead and 10% for profit.

23.     The "three trade rule" is a standard by which to determine when to include an

amount to pay an insured for the services of a general contractor.

24.     The "three trade rule" requires payment of general contractor's overhead and profit whenever damage to a home caused by a covered loss requires three or more trades to repair or restore a home to its pre-loss condition.

25.     As an example, should there be three trades associated with a claim, say framing, roofing, and painting.  And the replacement cost for each trade is framing - $3,000.00, roofing - $2,000.00, and painting - $1,000.00. Twenty percent (20%) is multiplied by the sum of all the costs for each separate trade $(3,000 + 2,000 + 1,000 = 6,000)$ and required to be paid.   That is, 20% x $6,000.00 = $1,200.00 is required to be included.

26.     The "three trade rule" has been a standard in the industry.

27.     However, recently there has been efforts by State Farm and other insurers to arbitrarily move away from that standard.

28.     Defendant used to follow the three trade rule with regard to determining whether to pay an amount general contractor's overhead and profit.

29.     Defendant abandoned using the three trade rule within the last decade or so.

30.     Defendant's motivation for abandoning the three trade rule was for its own profit.

31.     Since abandoning the three trade rule with respect to general contractor's overhead and profit, Defendant has not incorporated a reasonable, fair, and measurable

standard for making a determination about when it is obligated to pay general contractor's overhead and profit.

32.     Defendant intentionally and with malice refuses to incorporate any identifiable or measurable standard to be used when determining whether Defendant owes an insured an amount for general contactor's overhead and profit.

33.     Defendant's failure to delineate a reasonable standard is unreasonable at the inception of any claim wherein more than one trade is required to make repairs.

34.     The result of defendant's failure to establish a workable standard for determining whether payment for general contractor's overhead and profit is required has resulted in inconsistent and often irreconcilable differences in the way defendant has handled claims among its insureds.

35.     The scope of repair relative to Plaintiff's Claim required a minimum of six (6) trades, including, carpentering, fencing, overhead door installation, painter, roofer, siding, and HV/AC.

36.     And defendant has arbitrarily refused to pay to plaintiffs an amount for general contractor's overhead and profit.

37.     The unreasonable conduct of Defendant State Farm in the handling of Plaintiff's claim was willful and wanton or committed with such a reckless disregard to the rights of Plaintiff that punitive damages are warranted.

38.     As a result of State Farm's breach of the insurance policy and its breach of its

duty of good faith and fair dealing, plaintiffs have incurred financial damages as well as emotional distress.

39.    Plaintiff hereby requests that the matters set forth herein be determined by a jury.

## Prayer

40.    Wherefore, having properly plead, Plaintiffs hereby seek judgment in their favor and against Defendant State Farm in an amount in excess of $75,000.00, for actual and punitive damages, costs, interest, attorney fees, and any other relief that the Court may during this lawsuit find appropriate.

Respectfully submitted,

S/Timothy B. Hummel
Timothy B. Hummel, OBA # 16511
500 West Main Street, Suite 204
Oklahoma City, Oklahoma 73102
(405) 319-0300 telephone
(405) 319-0350 facsimile
tim@hummellawoffice.com
Attorney for Plaintiff

Attorney Lien claimed